ROBERTS, THROP & CO. *vs.* A. H. LAUGHLIN, *et al.*

Opinion filed June 23, 1894.

### Notes—Guaranty of Collection.

Three promissory notes payable to the plaintiffs were executed and delivered to plaintiffs by C. and S., and secured by chattel mortgage. Before the notes were delivered, the defendants indorsed upon each note a guaranty of collection, as follows: "For value received, we hereby guaranty the collection of the within note. Laughlin, Palmer & Co." *Held,* construing § 4280, Comp. Laws, that by this form of guaranty the defendants undertook only that the makers of the notes were solvent when the guaranty was entered into, and that the notes were "collectible by the usual legal proceedings, if taken with reasonable diligence."

### Laches—Release of Guarantor.

After two of the notes were due, plaintiff took of C. (one of the original debtors,) and one P., other notes secured by a chattel mortgage. The new notes and mortgage were executed and delivered solely as collateral to the first series of notes. The first series was not paid or surrendered, nor was the time of payment thereof extended. No action was ever brought against C. and S. upon the original notes, nor was the first mortgage ever foreclosed. Suit was not commenced upon any of the collateral notes for a period of over three years after the maturity of the first original note, and more than two years after the maturity of the first collateral note. The mortgage given with the collateral paper was not foreclosed until long after action was brought on such paper. The action is upon the guaranty. Plaintiffs had the burden of showing, as a condition precedent to recovery, that they had prosecuted their legal remedies, including the remedy of foreclosure, with reasonable diligence to collect the claim of the original debtors. Upon the facts stated, *held,* that plaintiffs cannot recover. The laches of the plaintiffs in pursuing their legal remedies against the debtors operates to exonerate the guarantors.

### Insolvency of Grantor will not Excuse Laches.

Conceding that it appeared that C. and S. were insolvent about one year after their first note matured, their insolvency would not excuse plaintiffs' laches in not foreclosing the first mortgage, nor their protracted delay in prosecuting their legal remedies upon the collateral securities.

### Directing Verdict.

Upon such a state of uncontroverted facts, the trial court would have been justified in instructing the jury to find for the defendants, upon the grounds above stated, as to all the notes, and the instruction, therefore, to find for the defendants as to the first note, was not error.

### Evidence Justified Verdict.

Evidence considered, and *held* that the verdict is justified by the evidence.

Appeal from District Court, Ransom County; *Lauder*, J.

Action by Roberts, Throp & Co., a corporation against Andrew H. Laughlin and others. Judgment for defendants. Plaintiff appeals.

Affirmed.

*Goodwin & Van Pelt*, (*Newman, Spalding & Phelps*, of counsel,) for appellant.

*P. H. Rourke*, for respondents.

WALLIN, J. This action is upon a guaranty indorsed by the defendants upon three promissory notes, before said notes were delivered to the plaintiff by the makers thereof. The guaranty indorsed upon each note is as follows: "For value received, we hereby guaranty the collection of the within note. Laughlin, Palmer & Co." The notes were executed and delivered to the plaintiff by one G. W. Curtiss and one C. M. Stewart, and were given for the purchase price of a threshing outfit. The notes were secured by a chattel mortgage upon the threshing outfit, and upon two horses. So far as appears in this record, no action was ever instituted on either of the notes against the makers, or against either of them; and no attempt was ever made to foreclose said chattel mortgage. All the notes bore date upon the 27th day of August, 1883, and matured as follows: One, for $109.50, fell due December 1, 1884; one for $250, fell due December 1, 1883; and one, for $210 fell due December 1, 1885. The complaint alleges that said notes are wholly unpaid, except that $113.90 was paid January 10, 1885, on the note first coming due. The complaint also avers that the notes were not paid at maturity, and that plaintiff gave notice of the nonpayment to defendants, and demanded payment of defendants, which was refused, and "that at the time of the execution and delivery of said notes, and of said guaranty, said Curtiss and Stewart were, and ever since that time have been, insolvent; and in or about the month of January, 1885, said Stewart removed from Dakota Territory, leaving no property therein from which said obligations could be satisfied." The answer, besides a general denial, admits

the execution of the notes and guaranty as alleged in the complaint. The answer also alleges two affirmative defenses, which are in substance as follows: That on January 10, 1885, all of said notes were fully paid and discharged in the manner hereinafter stated: Said Stewart and Curtiss paid plaintiff $112 in money, and at the same time said Curtiss and one A. C. Poor executed and delivered to plaintiff their two joint and several promissory notes, as follows: Each note was dated January 10, 1885; one, for $347.73, matured on the 1st day of December, 1885, and the other note, for $233.83, matured December 1, 1886. The second affirmative defense is, in substance, that the plaintiff, in consideration of the payment of said $112, and the execution and delivery to plaintiff of the said two last mentioned notes, expressly agreed that said Stewart should be wholly released and discharged from liability on three original notes, and that said A. C. Poor, who had succeeded to Stewart's interest in the threshing outfit, should become responsible, instead of Stewart. At the trial the answer was amended so as to allege that the plaintiff, without the knowledge or consent of the defendants, extended the time of payment on the original notes, to a date certain.

There was a jury trial. Defendant offered no evidence. The undisputed testimony offered in plaintiff's behalf established the following state of facts: Plaintiff recovered judgment against Curtiss and Poor, on the collateral notes in an action instituted in August, 1887; execution issued in 1889 on this judgment, and was returned *nulla bona.* Plaintiff in 1888 foreclosed the chattel mortgage given to secure the collateral notes, and sold the separator, horse-power, and three mares. The net proceeds of the foreclosure were $55. One Angel, acting for the plaintiff, visited Marshal County, Dak. T., early in January, 1885, where Curtiss then resided, and where Stewart had lived before leaving the territory. Angel, by suitable inquiries, ascertained that Stewart left the territory in the fall of 1884, leaving no property behind him, and that Curtiss besides the property covered by the chattel mortgage had only one team, and had no property

out of which the two notes then due could be collected by legal process. Angel also learned that, prior to Stewart's departure, it had been arranged between Curtiss, Stewart, and one A. C. Poor that the latter should take Stewart's interest in the threshing outfit, and should in consideration thereof, assume Stewart's liability upon the notes given therefor. Under these circumstances, an arrangement was made as follows: A payment was made of $112 on the note which matured December 1, 1883, out of the funds of Stewart and Curtiss, and for the balance due on the original notes Curtiss and Poor executed and delivered to Angel their three several promissory notes, payable to plaintiff, and dated January 12, 1885. One, for $50, matured February 15, 1885; one, for $377.73, fell due December 1, 1885; and one, for $223.83, matured December 1, 1886. To secure these notes, a chattel mortgage was taken from Curtiss and Poor upon the separator and horse-power and upon four horses. The new notes and chattel mortgage were taken as additional security, and as collateral to the original notes; but there was no direct evidence of an extension of the time of payment upon the original notes, and such indirect evidence as tended to show an extension of time was stricken out by the court, without objection. The case having been rested, counsel for the defendants requested the trial court to instruct the jury to find a verdict for the defendants. The motion was granted as to the $250 note which fell due December 1, 1883, and denied as to the other two notes. An exception was taken by the plaintiff to the following instructions: "You are instructed, as a matter of law, that the note for $250, dated August 27, 1883, and due December 1, 1883, is not in this case; and the court withdraws that note from your consideration, the court, holding as a matter of law, that the plaintiff is not entitled to recover on the guaranty on the note, for the reason that they have not exercised that diligence in attempting to collect of the makers of the note that the law imposes upon them to entitle them to proceed against the guarantors." The court, no exception being taken thereto, further instructed the jury as

follows: "You are instructed that there is no evidence in this case that the notes given by Curtiss and Poor were given in satisfaction of the notes in question. The testimony is that they were given as collateral, and not in satisfaction. There is some testimony on that point, but I take the responsibility of deciding that question myself. I also take the responsibility of deciding one other question. You will find that, at the time the second notes were given, there was no agreement that the time of payment of the notes in this case was extended." The verdict was for the defendants on all the issues.

The only error of law assigned in this court which we deem is necessary to notice is the claim that it was error in the trial court to withdraw the note falling due December 1, 1883, from the consideration of the jury, and to instruct them to find for the defendants upon that note. Plaintiffs also except to the verdict as not justified by the evidence, and specify that the evidence shows that the original debtors were insolvent when the original notes matured, and continued so to be until the trial, and also that the evidence shows due diligence on plaintiff's part to collect the note from the original debtors. In passing upon the assignments of error, it becomes necessary to consider the nature and extent of the obligation assumed by the defendants by their guaranty of the "collection" of the notes in suit. For this purpose we may safely have recourse to certain provisions of the Civil Code. Section 4280, Comp. Laws, reads: "A guaranty to the effect that an obligation is good, or is collectible, imports that the debtor is solvent and that the demand is collectible by the usual legal proceedings, if taken with reasonable diligence." Section 4281 reads: "A guarantee such as is mentioned in the last section is not discharged by an omission to take proceedings upon the principal debt or upon any collateral security for its payment, if no part of the debt could have been collected thereby." Section 4282 reads: "In the cases mentioned in § 4280 the removal of the principal from the territory, having no property therein, from which the obligation might be satisfied, is

equivalent to the insolvency of the principal in its effects upon the rights and obligations of the guarantor." It is apparent that the obligation assumed by the defendants belongs to the class of the guaranties which is defined by § 4280. The defendants did not, therefore assume to pay the notes unconditionally or at all. Their undertaking was only that the signers of the note were solvent when the guaranty was made, and that the notes could be collected "by the usual legal proceedings, if taken with reasonable diligence."

Taking up the assignments of error in the order above set out, the first question to be settled is whether the evidence embodied in the record shows, with respect to the note withdrawn from the consideration of the jury, that any of the conditions ever existed which would render the defendants liable upon their undertaking of guaranty. It is not contended that there is any evidence tending in the least to show that the orginal debtors (Curtiss and Stewart,) or either of them, were insolvent at the time the guaranty was signed. The complaint, however, expressly charges "that at the time of the execution and delivery of said note, and of said guaranty, said Curtiss and Stewart were, and ever since that time have been, insolvent." The allegation of the insolvency of the original debtors at the time the guaranty was entered into not being sustained by evidence, it follows that the first condition of the defendants' liability never came into existence. It is equally clear from the record that the plaintiff has wholly failed to show by testimony that the original debtors were insolvent at the time the first note came due, or for nearly one year thereafter. No evidence was offered relating to the solvency or insolvency of either Curtiss or Stewart, other than that directed to a date nearly one year after the first note matured, viz. until the fall of 1884. It appears that Stewart left the territory in the fall of 1884, and left no property within the territory. But, conceding that Stewart (under § 4282, *supra*,) became insolvent in the fall of 1884, there is yet a total failure of proof showing that either Stewart or Curtiss was insolvent prior to that time. The consequence is

(inasmuch as the law always presumes solvency until there is a showing to the contrary) that, for the purposes of this case, we must assume that the original debtors were solvent at all times from the date of the notes and guaranty until the fall of 1884. The plaintiff had the burden of proof to show insolvency, or to show the existence of some condition upon which the liability of the guarantors depended. Failing to show that the debtors were insolvent at the maturity of the first note, and for nearly one year thereafter, the burden was then upon plaintiff to show that it endeavored to collect the note of the principal debtors by resort to the "usual legal remedies with reasonable diligence." There is no claim that plaintiff ever brought suit upon the original notes against Curtiss and Stewart, nor that it ever attempted to foreclose the chattel mortgage given to secure the original notes. Nor was suit or foreclosure proceedings commenced upon the collateral paper until more than three years had elapsed after the maturity of one of the notes. It therefore clearly appears that plaintiff did not, with ordinary diligence, resort to the usual legal proceedings to collect the first note from the original debtors. Nor does it appear that legal proceedings would have been fruitless, by reason of the insolvency of the original debtors, at the time when the guaranty was entered into, or when the first note matured, or for nearly one year thereafter. Upon the evidence adduced, we think the instruction directing the jury to find for the plaintiff upon the guaranty indorsed upon the note maturing December 1, 1883, was entirely proper. The facts not being in dispute, the question was one of law for the court. *Craig* v. *Parkis*, 40 N. Y. 181. It is held in New York, in this class of guaranties, that the creditor has the burden of showing that in due time he instituted an action against the debtor. Showing insolvency of the debtor was not accepted as an excuse for not bringing the action. But we think the better rule, as established by the decided weight of authority, is that the failure to bring suit is excused where it appears that a suit would be fruitless. See *Brackett* v. *Rich*, 23 Minn. 485, and authorities there collated.

The provisions of the Civil Code which are cited above certainly voice the later and more reasonable rule of law. Where the debt is secured by mortgage, an unreasonable delay in foreclosing the mortgage will be such laches upon the part of the creditor as will exonerate the guarantor. *McMurray* v. *Noyes*, 72 N. Y. 523; *Crane* v. *Wheeler*, (Minn.) 50 N. W. 1033; *Dewey* v. *Investment Co.*, Id. 1032. See Brandt, Sur. § § 98, 99.

The second assignment of error, *i. e.* that which asserts that the verdict was not justified by the evidence, must also, upon the grounds and authorities above stated, be overruled. The time of payment of the original series of notes not having been extended, it follows that the creditor (the plaintiff) at all times after December 1, 1883, was in a position to foreclose the mortgage given to secure the notes in suit. This was not done at any time. If it were conceded—and it is not—that an action brought against the debtors would have been fruitless by reason of the insolvency of the debtors, such fact does not excuse the laches involved in the nonforeclosure of the first mortgage. Neither is there any excuse offered in the evidence for the long delay which occurred in foreclosing the mortgage given to secure the collateral series of notes. Two of that series of notes matured in the year 1885, and no foreclosure was made until 1888. Plaintiff's evidence stood alone, and was clear and uncontroverted. It was of a character to demonstrate that the plaintiff had wholly failed to make out a case as against the guarantors. Upon such a state of facts, defendants' motion, made at the close of the evidence, to instruct the jury to find for the defendants upon all of the issues, might well have been granted in its entirety. The failure of the court to do so, however, was, as to the second and third notes, a ruling in plaintiff's favor. The evidence fully justified the verdict.

Finding no error in the record, the judgment is affirmed. All concur.